# HARVEY & COMPANY LLC

## Summary of Terms

Set forth below is a summary of the terms upon which Harvey & Company LLC ("**Harvey**") will work with MidOcean US Advisor, LP ("**Sponsor**") by providing the Harvey Services (as defined below) in order to assist Sponsor in making acquisitions within parameters communicated to Harvey by Sponsor. This term sheet shall be binding on the parties.

1.   Retainer of Services. To compensate Harvey for the time and effort for providing the Harvey Services to Sponsor, Sponsor shall pay Harvey $5,000 per month, beginning August 30, 21. Thereafter, retainers shall be due and payable on the first day of each monthly period during the Term. This agreement shall continue unless terminated by either party effective upon written (including email) notice to the other (the period during which this Agreement is in effect, the "**Term**"), with such termination taking effect on the last day of the month in which such notice is provided; provided, however, that the obligations incurred hereunder as of the expiration of the Term shall continue in full force and effect following such termination. Retainers timely paid will be applied against Transaction Fees (as defined below), as set forth in Section 4 below.

2.   Harvey Services. The "**Harvey Services**" to be provided hereunder shall include (1) advising and assisting Sponsor in identifying, evaluating and developing acquisition strategies; (2) identifying companies or businesses determined by Harvey to meet Sponsor's specific acquisition criteria; (3) negotiating non-disclosure agreements and collecting financial statements and operating information from acquisition candidates; and (4) approaching, analyzing, and introducing acquisition Target Companies (as defined below). In furtherance of the foregoing, Harvey shall compile and deliver a target list of acquisition candidates on a regular basis. Following receipt of such lists provided to Sponsor that may be updated or supplemented by Harvey during the Term, Sponsor will have the right to remove any acquisition candidate set forth on the target list in its sole discretion. Acquisition candidates approved by Sponsor for Harvey to approach, or otherwise introduced to the Sponsor by Harvey, shall be deemed approved "**Target Companies**" hereunder. For the avoidance of doubt, acquisition candidates removed by Sponsor from any target lists shall not be deemed a Target Company. Other than approved Target Companies, Harvey shall not disclose to any Target Companies or any of their advisors the name of Sponsor, without Sponsor's prior written consent. The Harvey Services shall not include the performance of a due diligence review of any potential acquisition candidate.

3.   Reimbursement for Expenses. Sponsor shall reimburse Harvey for its (a) pre-approved out of pocket, project-related expenses, including travel expenses, and (b) reasonable attorneys' fees not to exceed $25,000 incurred by Harvey in connection with the negotiation of transaction documentation, which shall be reimbursed upon the closing of a transaction.

1

4.    <u>Transaction Fee</u>.  As compensation for Harvey's successful performance of the services described in <u>Section 2</u> above, upon the closing of a transaction with a Target Company, provided the closing is within two years of the date the Target Company was Last Introduced (as defined below), Harvey shall receive a "**Transaction Fee**" equal to the sum of the amounts calculated pursuant to the following schedule:

  a. 5% of the Aggregate Valuation between $0 and $1,000,000;

  b. 4% of the Aggregate Valuation between $1,000,001 and $2,000,000;

  c. 3% of the Aggregate Valuation between $2,000,001 and $3,000,000;

  d. 2% of the Aggregate Valuation between $3,000,001 and $25,000,000; and

  e. 1% of any Aggregate Valuation above $25,000,000.

<u>Provided</u>, that the minimum Transaction Fee for any transaction shall be $300,000.  The portion of any individual Transaction Fee in excess of $300,000 due to Harvey hereunder will be reduced by the amount of retainer fees timely and actually paid by the Sponsor to Harvey during the twelve month period preceding the applicable transaction closing, until the total of such reductions equals the total retainer paid during such period; <u>provided</u>, that (i) in no event shall the retainer offset be applied to reduce a Transaction Fee below the minimum Transaction Fee described above, and (ii) any retainer fees applied to reduce Transaction Fees due Harvey hereunder may be so applied only once.

"**Last Introduced**" means, with respect to a Target Company, the date of the most recent communication from Harvey to Sponsor during the Term providing new or updated material information (excluding publicly available information such as SEC filings) possessed by Harvey with respect to acquiring such Target Company which leads directly to substantial discussions between Sponsor and such Target Company regarding a transaction, or the most recent date of substantive discussions during the Term initiated by Harvey between Sponsor or its affiliates and such Target Company regarding a transaction.

"**Aggregate Valuation**" is the purchase price payable to the sellers or their affiliates of a Target Company, however paid, inclusive of any debt assumed, notes payable, earned "earn outs" or securities issued, and any above-market amounts paid pursuant to employment arrangements, consulting agreements, agreements not to compete and similar agreements.  Any portion of the Transaction Fee attributable to any potential "earn out" purchase price consideration, shall be deferred until Sponsor delivers such additional "earn out" consideration to the sellers of the Target Company in accordance with the terms of such transaction.  In the case of a non-control investment made in a Target Company, the Aggregate Valuation shall consist of the investment amount made by Sponsor and any of its co-investors plus any incremental debt incurred by Target Company as part of the transaction.  If the currency of the relevant transaction is not U.S. Dollars, for purposes of determining the Aggregate Valuation the purchase price shall be aggregated in the foreign currency and then converted to a U.S. Dollar amount using the applicable exchange rate in effect on the date the Transaction Fee becomes due, with the resulting U.S. Dollar amount being the Aggregate Valuation for purposes of the above schedule.

2

5.    Equity Interests.

5.1    Percentage Equity Interest.  Upon the closing of a transaction with a Target Company, Sponsor shall cause Harvey or its designee (collectively referred to as "Harvey" for the equity related provisions hereof) to receive a two percent (2.0%) equity interest, calculated on a fully diluted basis, in the legal entity through which the transaction is to be conducted (whether a corporation, limited liability company or other entity, including, if no new entity is formed in connection with the acquisition, the acquired entity itself) (the **"Holding Company"**) in the form of a warrant (if the Holding Company is a corporation), or in the form of profits interest (if the Holding Company is a limited liability company or is otherwise treated as a partnership for federal income tax purposes (an **"LLC"**)), on the terms and conditions set forth herein.  In the event of a minority investment transaction, the warrant shall provide a Holding Company equity interest to Harvey with an economic value equal to two percent (2.0%) of the equity value in the Holding Company held by Sponsor and its co-investors and any new Holding Company management team investment.  In the event such transactions are conducted through a tiered structure involving one or more intermediate entities between the entity that acquires the Target Company and the entity that issues equity to Sponsor and Harvey, Harvey's equity interest shall be adjusted if necessary to avoid any dilution to the agreed-upon percentage interest attributable to the tiered structure.  Thereafter, Harvey's equity interest shall be entitled to customary weighted average dilution protection; provided, however, that Harvey's equity interest that was issued as a warrant or profits interest (as outlined in Section 5.2) shall not be diluted by additional equity investments made in the Holding Company to fund one or more future acquisitions of a company or business that is sourced by Harvey in a manner consistent with this agreement as if Harvey were entitled to receive a Transaction Fee hereunder.

5.2    Form of Percentage Equity Interest.

(a)    Warrant.  In the event the Holding Company is a corporation, the warrant shall represent the right to purchase Holding Company equity securities in the same proportion of common and preferred securities as are received by the Sponsor at the applicable closing at an exercise price with respect to the underlying common and preferred stock equal to the Sponsor's per share purchase price for such securities at the relevant closing.  At Harvey's sole option, the warrant itself shall be purchasable by Harvey for its fair market value, as determined either by an appraisal firm chosen by Harvey that is reasonably acceptable to Sponsor and paid for by Harvey (which may occur either before or after issuance), or for its fair market value as mutually agreed by Harvey and Sponsor.  Harvey may elect to pay the warrant purchase price so determined in cash or with a full-recourse debt instrument reasonably acceptable to Sponsor.  Any warrant received will be immediately exercisable in whole or in part and shall remain exercisable for 10 years from its date of issue, and will have a net issuance (i.e., "cashless") exercise privilege.  The warrant shall provide that Harvey may participate in any form of return on the underlying securities in excess of the purchase price of such securities without being required to exercise the warrant.  Solely upon the occurrence of, and concurrently with, a Liquidity Event, Harvey shall be required to either (at Harvey's choice) sell the unexercised warrant or exercise the warrant and then

3

sell the underlying shares, in whole or in part pro rata with the other Holding Company investors, to the buyer of Holding Company for cash in an amount equal to the value of the shares issuable up on the exercise of the warrant (at the value given such shares in the applicable Liquidation Event) over the aggregate exercise price per share of the equity securities underlying the portion of the warrant sold to the Sponsor. A "**Liquidity Event**" shall mean any material transaction whereby the equityholders of the Holding Company are to receive consideration (excluding equity interests) in exchange for their Holding Company equity interests, and shall be deemed to have occurred to the extent such consideration is available in exchange for the shares issuable upon exercise of the equity securities.

(b)     Profits Interest. In the event the Holding Company is an LLC, the profits interest shall represent the right to receive a percentage of LLC profits and distributions after all equity investments made in the LLC have been repaid to the members thereof but before or concurrently with the distribution, directly or indirectly, of any of the profits or any form of preferred return (unless the profits interest itself represents the same percentage interest in such preferred return) to any of the members of such LLC, and shall be issuable to Harvey in exchange for the services rendered hereunder in connection with the related transaction closing.

5.3     Option to Participate in Holding Company Financing. In addition to the Holding Company equity interest percentage described in Section 5.1 above, upon the closing of a transaction with a Target Company, Harvey shall, assuming such investing entity is an accredited investor, have the right, but not the obligation, to purchase Holding Company equity securities being offered in the relevant closing on the same terms and conditions as Sponsor and its co-investors, up to five percent (5.0%) of the equity investment being made by Sponsor and its co-investors, any rollover shareholders in Holding Company, and any Holding Company management team investment. Thereafter Harvey shall have the right, but not the obligation, to participate along with and on the same terms and conditions as the initial investor group in any future Holding Company equity issuances so as to maintain its aggregate Holding Company equity interest percentage at that point in time as may have been diluted as permitted by this Agreement (i.e., the sum of Harvey's equity position acquired at closing, if any, pursuant to the foregoing sentence, plus its initial equity interest percentage in the form of a warrant or profits interest as described in Section 5.1 above, both of which as may have been diluted as permitted by this Agreement).

5.4     Investors Rights Agreement. It is anticipated that each Holding Company, the Sponsor, Harvey and their respective affiliates receiving Holding Company securities will enter into an investors rights agreement addressing the obligations of the Holding Company and its investors with respect to each other as to such matters as registration rights, information rights, tag-along rights, co-sale rights, pre-emptive rights, rights of first refusal and permitted transfers of the securities, which agreement will be upon terms substantially similar as the Sponsor; provided, however, that Harvey shall not be entitled to certain terms such as demand registration rights, drag-along rights or board representation rights. For the avoidance of doubt, Harvey acknowledges and agrees that Sponsor, directly or through its affiliates, will be the lead

4

investor in any Holding Company and will exercise managerial control thereof.

6.    Indemnification.  The Sponsor shall indemnify and hold Harvey and its affiliates and their respective directors, members, managers, officers, employees and agents harmless from and against all losses, claims, damages, liabilities, cost or expenses, arising out of or resulting from Harvey's engagement by the Sponsor, except to the extent such losses, claims, damages, liabilities, cost or expenses arise directly out of or result from Harvey's fraud, willful misconduct or gross negligence.  The indemnification provided hereunder shall also include reasonable attorney's and accountant's fees and reasonable out-of-pocket expenses incurred by any entity or person entitled to indemnity hereunder in connection with any matter for which a claim of indemnity is made, except to the extent such expenses arise directly out of or result from Harvey's fraud, willful misconduct or gross negligence.  Such indemnification shall survive the expiration of the Term.

7.    Confidentiality.  Each of Harvey and Sponsor may provide the other with certain information (the "Confidential Information") which the disclosing party reasonably designates as confidential and proprietary and is being provided to the other solely for use in connection with this Agreement.  The receiving party shall keep the Confidential Information secret and utilize the Confidential Information only in connection with this Agreement, and shall not otherwise make use, commercial or otherwise, of the Confidential Information without the disclosing party's prior written consent, provided that the restrictions set forth in this Section 7 shall not apply whatsoever to information regarding the tax structure or tax treatment of any transaction or arrangement, which may be disclosed without any restrictions imposed by this Section 7.  Harvey's Confidential Information includes the terms of this Agreement, the identity of and all other non-public information regarding Target Companies disclosed by Harvey, and for the avoidance of doubt such Harvey Confidential Information may not be disclosed to any other person, other than the Sponsor's employees, directors, officers, affiliates, and advisors (including accountants, lawyers, consultants, and potential financing sources), who need to know such information for purposes of evaluating a potential transaction.  Sponsor's Confidential Information includes the fact that any Confidential Information is in the process of being made available to, or has been made available to, Harvey; that discussions or negotiations are taking place concerning a possible transaction involving the Target Company and Sponsor; the proposed terms of, or any other facts relating to, Harvey's compensation for the possible transaction, and information, observations and data (including trade secrets) obtained by Harvey while actively involved with the Sponsor concerning the business or affairs of the Sponsor, including any information obtained regarding prospective investments.  In addition, to the extent that any confidential or proprietary information of other persons or entities is made available to MidOcean (or to Harvey in the course of carrying out its responsibilities to MidOcean) is subject to the terms of a confidentiality or similar agreement to which MidOcean or an affiliate is a party, Harvey also agrees to abide by the terms of such confidentiality or similar agreement to the extent such restrictions are disclosed to Harvey.

8.    Documents.  The Sponsor shall cause Harvey to receive the following documents.

8.1    Prior to Closing.  Sponsor shall cause Harvey to be included on the general distribution list for the relevant Target Company transaction and Harvey shall be entitled to comment upon or execute the relevant transaction documents relating to Harvey's equity interests on the same timetable as the other members of Sponsor's investment group.

8.2    Closing Documents.  Sponsor shall cause Harvey or its designee to receive copies of any relevant closing documents relating to Harvey's equity interests as soon as they become generally available to the other parties to such transaction.

8.3    Other Documents.  Sponsor shall cause Harvey to timely receive such other documents as Harvey may reasonably request from time to time in connection with this Agreement, including without limitation monthly and annual Holding Company financial statements and copies of all relevant agreements, instruments and other documents (e.g., capitalization tables) relating to the capital structure of the Holding Company that would be relevant to Harvey's equity interests.

9.    Legal Effect.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York (irrespective of its choice of law principles).  Controversies among the parties and their affiliates shall be adjudicated solely in the state or federal courts located in New York, New York.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective successors and assigns, including without limitation, successors or assigns (by purchase or otherwise) of a majority of the assets of the Sponsor.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.    Attorneys' Fees.  In the event of any legal proceeding between the parties arising from this agreement, the prevailing party will be entitled to recover, in addition to any other relief awarded or granted, its reasonable costs and expenses (including court costs and reasonable fees for attorneys, accountants and expert witnesses) incurred in the course of the proceeding.

11.    Non-Solicitation.  During the Term and for the 12 month period subsequent thereto, the Sponsor shall not solicit for employment any directors, officers or employees of Harvey without Harvey's prior written consent, such consent to be given or withheld in Harvey's sole and absolute discretion.  However, Sponsor shall not be prohibited (i) from offering to employ or from employing any such person who contacts Sponsor on his or her own initiative without solicitation directly or indirectly by Sponsor or on its behalf; (ii) hiring a former officer or employee who was terminated by Harvey; or (iii) from initiating searches for employees or from hiring any employees who respond to any general advertisement in the media (including trade media) or through the engagement of firms to conduct searches that are not targeted or focused on Harvey or its subsidiaries.  Notwithstanding anything contrary in this agreement, nothing in this letter

6

agreement shall be deemed to prohibit any solicitation for employment by any of Sponsor's affiliates who have not been made aware of any discussions between Harvey and Sponsor nor to whom no confidential information has been disclosed.

12.   Relationship of the Parties.  Harvey acknowledges that the services to be provided by it shall be that of an independent contractor and that it shall not, unless otherwise expressly authorized in writing by the Sponsor, have any authority to act for or bind the Sponsor in any way, execute any transaction on behalf of the Sponsor or otherwise be deemed an agent of the Sponsor.  Harvey understands that as an independent contractor it will be solely responsible for making all tax payments owed in respect of fees paid to it and that the Sponsor will not withhold any amounts on its behalf. Harvey acknowledges that Sponsor or others may issue an IRS Form 1099 (and similar forms for purposes of corresponding provisions of state, local and foreign law), with respect to the payment of amounts to Harvey under this agreement.  Harvey agrees to provide Sponsor and others, as reasonably requested, with an IRS Form W-9 and any other forms or documentation as may be reasonably requested in order to comply with any relevant tax requirements or regulations.

The signatures of the parties below evidence their acceptance of these terms.


MIDOCEAN  US ADVISOR, LP

By:  _____
Its:  _____
Date:  _____


HARVEY & COMPANY LLC

By:  David W.M. Harvey
Its:  President
Date:  8/23/11


7