# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

HARVEY & COMPANY LLC,

                Plaintiff,

-against-

MIDOCEAN US ADVISOR, LP,

                Defendant.

------------------------------------------------------------X

**COMPLAINT**

Case No. 16 cv 3553

Plaintiff Harvey & Company LLC ("Plaintiff" or "Harvey"), by and through its attorneys, Crowell & Moring LLP, as and for its Complaint against MidOcean US Advisor, LP ("Defendant" or "MidOcean"), hereby alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff pursues this action for damages for breach of contract and for specific performance in connection with the parties' services agreement dated August 2011 (the "Agreement"), attached hereto as Exhibit A.

2. The Agreement provided for Harvey, an acquisition search firm, to identify and introduce to MidOcean, a private equity firm, target companies for acquisition by MidOcean. For any target company introduced by Harvey and acquired by MidOcean, MidOcean was obligated to compensate Harvey with a cash payment equal to a percentage of the aggregate value of the transaction, and an equity interest in the post-acquisition entity.

3. During the summer of 2013 through the end of April 2014, Harvey made an introduction, provided financial information and facilitated discussions between MidOcean and a target company called KidKraft, LP ("KidKraft"). In or about July 2015, MidOcean closed a

1

transaction in which it acquired KidKraft. MidOcean nonetheless has refused to pay Harvey the compensation to which Harvey is entitled under the Agreement.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. The Agreement provides that "[c]ontroversies among the parties and their affiliates shall be adjudicated solely in the state or federal courts located in New York, New York." (Exhibit A, at § 9.) MidOcean thus has consented to the personal jurisdiction of this Court and this venue, which is otherwise proper on account of MidOcean's activities in New York, New York, including in connection with its acquisition of KidKraft.

## THE PARTIES

6. Harvey is a California limited liability company, with its principal place of business at 5000 Birch Street, Newport Beach, California 92660. All of Harvey's members reside in California.

7. MidOcean, upon information and belief, is a New York limited partnership, with its principal place of business at 320 Park Avenue, New York, New York 10022. Upon information and belief, none of MidOcean's partners are residents of the State of California.

## FACTUAL ALLEGATIONS

The Agreement

8. The parties entered into the Agreement in August 2011. Pursuant to the Agreement, Harvey provided services to MidOcean, including, *inter alia*, "(1) advising and assisting [MidOcean] in identifying, evaluating and developing acquisition strategies;

(2) identifying companies or businesses determined by Harvey to meet Sponsor's specific acquisition criteria; (3) negotiating non-disclosure agreements and collecting financial statements and operating information from acquisition candidates; and (4) approaching, analyzing, and introducing acquisition Target Companies (as defined below)" (Exhibit A, at § 2.)

9. The definition of "Target Companies" under the Agreement was "[a]cquisition candidates approved by [MidOcean] for Harvey to approach, or otherwise introduced to Sponsor." (Exhibit A, at § 2.) During the term of the Agreement, there were 185 such Target Companies approved by MidOcean for Harvey to approach or otherwise introduced by Harvey to MidOcean. Of those 185 Target Companies, more than two dozen expressed interest in exploring a transaction with MidOcean. Only KidKraft, however, was actually acquired by MidOcean, following an introduction by Harvey pursuant to the Agreement.

10. In return for Harvey's services, MidOcean agreed to pay Harvey a monthly retainer of $5,000, as well as a "Transaction Fee" consisting of a percentage of the "Aggregate Valuation" of any transaction consummated by MidOcean involving a Target Company. (Exhibit A, at § 4.) In addition, upon the closing of a transaction with a Target Company, MidOcean was obligated to "cause Harvey or its designee . . . to receive a two percent (2.0%) equity interest, calculated on a fully diluted basis, in the legal entity through which the transaction is to be conducted." (Exhibit A, at § 5.) That "Equity Interest," depending upon the nature of the transaction, could be in the form of warrants or a profit interest. (*Id.*)

11. The Agreement further provided that, as part of the "Equity Interest" component of the compensation for Harvey's services, upon the closing of a transaction with a Target Company, Harvey had the option of purchasing additional equity in the new legal entity, worth up to 5% of the equity investment being made by MidOcean.

3

12. In order to earn a Transaction Fee and Equity Interest under the Agreement, there was no obligation on Harvey to do anything more to facilitate the transaction other than to introduce the Target Company to MidOcean. Nor was there any qualification on Harvey's right to compensation based on the process by which MidOcean acquired the Target Company.

13. In fact, the Agreement provided, for example, that Harvey's services "shall not include the performance of a due diligence review of any potential acquisition candidate." (Exhibit A, at § 2.)

14. The Agreement gave MidOcean the right to terminate the Agreement, provided, however, that in the event of termination, obligations incurred prior to termination would remain in full force and effect. (Exhibit A, at § 1.) These obligations included the obligation of MidOcean to pay Harvey its compensation for any introductions made to a Target Company prior to termination, even if MidOcean's acquisition of that Target Company closed post-termination.

15. The Agreement expressly provided that Harvey would be entitled to the cash Transaction Fee "upon the closing of a transaction with a Target Company" provided only that the closing occurred "within two years of the date the Target Company was Last Introduced (as defined below)." (Exhibit A, at § 4.) The term "Last Introduced" was defined as "the date of the most recent communication from Harvey to MidOcean during the Term providing new or updated material information (excluding publicly available information such as SEC filings) possessed by Harvey with respect to acquiring such Target Company which leads directly to substantive discussions between [MidOcean] and such Target Company regarding a transaction, or the most recent date of substantive discussions during the Term initiated by Harvey between [MidOcean] or its affiliates and such Target Company regarding a transaction." (Id.)

4

16. With respect to the obligation of MidOcean to grant Harvey the equity component of its fee and give Harvey the opportunity to co-invest with MidOcean in the company being acquired, that obligation was also required to be fulfilled by MidOcean "upon the closing of a transaction with a Target Company." (Exhibit A, at §§ 5.1 and 5.3.)

The Transaction

17. In or about June 2013, after discussions with the financial advisor for the company KidKraft, Harvey identified KidKraft as a potential acquisition candidate for MidOcean. KidKraft, a privately held company, was not necessarily interested in a sale at the time, but KidKraft's financial advisor authorized Harvey to identify KidKraft to Harvey's client as a candidate for a transaction.

18. On July 30, 2013, Jared Perrin of Harvey wrote to David Basto and Tyler Alexander of MidOcean regarding KidKraft and inquired if MidOcean would be interested in learning more about KidKraft as an acquisition candidate.

19. On July 31, 2013, David Basto of MidOcean wrote to Jared Perrin of Harvey requesting additional information about KidKraft. Jared Perrin responded the same day providing MidOcean with detailed information about KidKraft.

20. On August 20, 2013, Tyler Alexander of MidOcean wrote to Jared Perrin of MidOcean indicating that MidOcean was interested in KidKraft as an acquisition candidate.

21. Communications between Harvey and MidOcean about KidKraft and between Harvey and representatives of KidKraft about MidOcean continued through the Fall of 2013. The subject of all of these communications was whether and when the parties should commence discussions concerning a potential acquisition by MidOcean of KidKraft.

22. In December 2013, KidKraft executed a non-disclosure agreement with Harvey to allow Harvey to share financial information about the company with MidOcean.

23. After several months of deliberation, Steven Lampert, the CEO of KidKraft, agreed to talk with Harvey and MidOcean about a potential transaction between KidKraft and MidOcean. On April 29, 2014, a conference call was convened by Jared Perrin of Harvey, which call was attended by Mr. Perrin, Steven Lampert of KidKraft, KidKraft's financial advisor John Peiser of Goldin Peiser & Peiser, and Daniel Penn of MidOcean. That call, which lasted over 45 minutes, involved substantive discussions regarding a transaction, and specifically discussions about the parties' respective businesses to determine if there was a strategic fit and whether an acquisition of KidKraft by MidOcean made business sense.

24. On or about July 16, 2014, MidOcean notified Harvey that it was terminating the Agreement.

25. On or about July 15, 2015, MidOcean announced publicly its acquisition of KidKraft. MidOcean had acquired KidKraft through an auction process conducted by Lazard, an investment bank engaged by KidKraft. Upon information and belief, MidOcean's participation in that auction process, as well as its successful acquisition of KidKraft through that process, were direct results of Harvey's introduction of MidOcean to KidKraft in the months before the auction process began.

26. Immediately upon learning of MidOcean's acquisition of KidKraft, Harvey wrote to MidOcean requesting payment of the compensation to which Harvey was entitled under the Agreement. MidOcean refused to provide Harvey its compensation in connection with the KidKraft acquisition. The sole purported justification given by MidOcean for its refusal to compensate Harvey was that MidOcean had acquired KidKraft through an auction process.

27. The Agreement contained no exception to Harvey's entitlement to compensation based on the process by which a Target Company was acquired by MidOcean, but rather that compensation was earned when Harvey made an introduction of MidOcean to the Target Company, payable upon the closing of a transaction with the Target Company regardless of how that transaction came about.

### FIRST CLAIM FOR RELIEF

### (Breach of Contract)

28. Harvey repeats and realleges each and every allegation set forth in paragraphs 1-27 above with the same force and effect as if set forth herein in full.

29. Harvey and MidOcean were parties to an enforceable Agreement pursuant to which Harvey would be entitled to compensation, comprised of a percentage of the value and an equity interest in any transaction closed by MidOcean with a Target Company introduced to MidOcean by Harvey.

30. Harvey fully performed under the Agreement. Harvey introduced KidKraft to MidOcean, and MidOcean acquired KidKraft.

31. MidOcean has breached the Agreement by refusing to pay Harvey the compensation to which Harvey is entitled, and by refusing to afford Harvey the right to acquire additional equity, on account of MidOcean's acquisition of KidKraft.

32. By reason of MidOcean's breach, Harvey has incurred damages. On the basis of Harvey's understanding of the terms of the KidKraft transaction, the cash Transaction Fee to which Harvey is entitled is at least $1,510,000.00. Upon information and belief, the current value of the equity interest to which Harvey is entitled under the Agreement is unable to be quantified at this time.

## SECOND CLAIM FOR RELIEF

### (Specific Performance)

33. Harvey repeats and realleges each and every allegation set forth in paragraphs 1-32 above with the same force and effect as if set forth herein in full.

34. In addition to failing to pay Harvey the cash Transaction Fee owed under the Agreement, MidOcean has deprived Harvey of the Equity Interest, including an equity interest equal to 2% of the post-transaction KidKraft entity, and the right to purchase additional equity (up to 5%) in the post-transaction KidKraft entity.

35. Given that there is no ready market for shares of KidKraft, upon information and belief, the value of the Equity Interest in KidKraft to which Harvey was and is entitled under the Agreement is not subject to valuation to a reasonable degree of certainty. Harvey thus seeks specific performance with respect to the Equity Interest provisions of the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Harvey & Company LLC prays that this Court enter a judgment in favor of Harvey and against Defendant MidOcean US Advisor, LP, for:

a. Compensatory damages in an amount to be determined at trial, but believed to be at least $1,510,000;

b. An order directing MidOcean to remit to Harvey warrants or a profits interest equal to 2% of the total equity in the KidKraft post-acquisition entity;

c. An order granting Harvey the right to obtain additional equity in KidKraft (up to 5% of all outstanding equity) on the same terms and conditions upon which MidOcean made its investment at the time of the closing of its acquisition of KidKraft;

d. Compensation for any negative tax impact on Harvey from the delayed issuance of equity, which equity should have been issued to Harvey at the closing of the KidKraft transaction;

e. Prejudgment interest at the rate of 9% per annum.

f. Costs and expenses, including attorneys' fees and other professional fees in accordance with Section 10 of the Agreement; and

g. Such other and further relief as the Court may deem just and proper.

Dated: May 12, 2016
New York, New York

Respectfully submitted,

**CROWELL & MORING LLP**

BY: _____
ALAN HOWARD (AH-7544)
JARED LEVINE (JL-0821)
590 Madison Avenue
New York, New York 10022
Telephone: 212-223-4000
E-mail: AHoward@Crowell.com

*Attorneys for Plaintiff*
*Harvey & Company LLC*