UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                              :

HARVEY & COMPANY LLC,             :

                 Plaintiff,     :    Case No. 16-cv-3553 (SHS) (RWL)

                              :    ECF Case

      –against–             :

MIDOCEAN US ADVISOR, LP,     :

               Defendant.    :

---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MIDOCEAN US ADVISOR, LP'S MOTION FOR SUMMARY JUDGMENT

**COHEN & GRESSER LLP**
Daniel H. Tabak
800 Third Avenue, 21st Floor
New York, NY 10022
Phone: (212) 957-7600
Fax: (212) 957-4514

Erica C. Lai (admitted *pro hac vice*)
2001 Pennsylvania Avenue NW, Suite 300
Washington, DC 20006
Phone: (202) 851-2070
Fax: (202) 851-2081

*Attorneys for Defendant*
*MidOcean US Advisor, LP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF UNDISPUTED FACTS ................................................................... 3

LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT.................. 13

ARGUMENT .............................................................................................................. 14

I.   HARVEY IS NOT ENTITLED TO ANY EQUITY FEE BECAUSE THE
     TRANSACTION CLOSED AFTER THE TERMINATION OF THE CONTRACT ..... 14

II.  THE UNDISPUTED EVIDENCE SHOWS THAT HARVEY'S ACTIONS
     COULD NOT HAVE DIRECTLY CAUSED MIDOCEAN'S ACQUISITION OF
     KIDKRAFT BECAUSE KIDKRAFT HAD NO INTEREST IN MIDOCEAN
     AFTER (OR BEFORE OR DURING) THE INTRODUCTION AND THE
     AUCTION WAS AN INTERVENING CAUSE............................................................ 17

     A.   Under Well-Settled New York Precedent, Every Finder's Fee Contract
          Requires Direct Causation Unless It Is Unambiguously Waived in the
          Contract............................................................................................................ 18

     B.   Harvey Cannot Demonstrate a Direct Causal Relationship Between the 45-
          minute April 2014 MidOcean-KidKraft Call It Set up and the Ultimate
          Acquisition That Took Place More Than 14 Months Later, Following a Very
          Broad Auction Process..................................................................................... 20

     C.   Harvey Also Cannot Demonstrate Causation Because the Auction Was an
          Intervening Cause ............................................................................................ 23

III. HARVEY IS NOT ENTITLED TO A TRANSACTION FEE UNDER SECTION 4
     BECAUSE IT DOES NOT ALLEGE THAT IT MET EITHER "LAST
     INTRODUCED" HURDLE.......................................................................................... 26

     A.   Harvey Did Not Initiate "Substantive Discussions" Regarding a Transaction
          During the Contract Term ............................................................................... 27

     B.   Harvey Failed to Provide Material, Non-Public Information Directly
          Leading to a Substantial Discussion About a Transaction................................... 32

CONCLUSION.............................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrister Referrals, Ltd. v. Windels, Marx, Davies & Ives*,
　169 A.D.2d 622 (1st Dep't 1991) ............................................ 19

*Beverley v. Mickleberry Corp.*,
　161 A.D.2d 292 (1st Dep't 1990) ............................................ 19

*Burke v. Jacoby*,
　981 F.2d 1372 (2d Cir. 1992) ................................................. 13

*Celotex Corp. v. Catrett*,
　477 U.S. 317 (1986) ............................................................... 13

*Edward Gottlieb, Inc. v. City & Commercial Commc'ns PLC*,
　606 N.Y.S.2d 148 (1st Dep't 1994) ........................................ 19

*Farr v. Travelers Indem. Co.*,
　375 N.Y.S.2d 229 (N.Y. Sup. Ct. 1975) ................................. 16

*Fed. Ins. Co. v. Am. Home Assur. Co.*,
　639 F.3d 557 (2d Cir. 2011) ................................................... 16

*Ferghana Partners Inc. v. Bioniche Life Scis. Inc.*,
　939 N.Y.S.2d 740, 2011 WL 5385095 (N.Y. Sup. Ct. 2011) ................ 18

*Fishoff v. Coty, Inc.*,
　634 F.3d 647 (2d Cir. 2011) ................................................... 19

*Goodridge v. Harvey Group, Inc.*,
　778 F. Supp. 115 (S.D.N.Y. 1991) .................................... 31, 32

*I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*,
　587 F. Supp. 844 (S.D.N.Y. 1984) ........................................ 32

*In re Big Apple Volkswagen, LLC*,
　No. 11-11388 (JLG), 2016 WL 1069303 (Bankr. S.D.N.Y. Mar. 17, 2016) ........ 16

*In re Le Café Crème, Ltd.*,
　244 B.R. 221 (Bankr. S.D.N.Y. 2000) .................................... 16

*In re: BH S&B Holdings LLC*,
　426 B.R. 478 (Bankr. S.D.N.Y. 2010) .................................... 16

Page(s)

*Innovative BioDef., Inc. v. VSP Techs., Inc.*,
  No. 12 CIV. 3710 ER, 2013 WL 3389008 (S.D.N.Y. July 3, 2013) ....................................... 15

*Karelitz v. Damson Oil Corp.*,
  820 F.2d 529 (1st Cir. 1987) ........................................................................................ 18, 23

*LaSonde v. Seabrook*,
  89 A.D.3d 132 (1st Dep't 2011) ........................................................................................ 27

*Mgmt. Recruiters of Boulder v. Nat'l Econ. Research Assocs., Inc.*,
  No. 02 Civ. 3507 (BSJ), 2005 WL 77059 (S.D.N.Y. Jan. 13, 2005) ..................................... 19

*Moore v. Sutton Res., Ltd.*,
  165 F.3d 14 (2d Cir. 1998) ................................................................................................ 18

*Moore v. Sutton Res., Ltd.*,
  No. 96 Civ. 7522 (RWS), 1998 WL 67664 (S.D.N.Y. Feb. 18, 1998) ........................ 18, 20, 23

*Multi Capital Group LLC v. Karasick*,
  No. 652598/2011, 2015 WL 1850506 (N.Y Sup. Ct. Apr. 22, 2015) ..................................... 19

*Retail Assocs., Inc. v. Macy's E., Inc.*,
  245 F.3d 694 (8th Cir. 2001) .............................................................................................. 14

*Rooney v. Tyson*,
  91 N.Y.2d 685 (1998) ........................................................................................................ 19

*Rubin v. Mfrs. Hanover Trust Co.*,
  661 F.2d 979 (2d Cir. 1981) .............................................................................................. 16

*Sokoloff v. Harriman Estates Dev. Corp.*,
  96 N.Y.2d 409 (N.Y. 2001) ................................................................................................ 19

*Twitchell v. Town of Pittsford*,
  106 A.D.2d 903 (4th Dept. 1984) ....................................................................................... 15

*Twitchell v. Town of Pittsford*,
  66 N.Y.2d 824 (1985) ........................................................................................................ 15

*Urban Retail Props. v. Loews Cineplex Entm't Corp.*,
  No. 01 Civ. 8946 (RWS), 2002 WL 535479 (S.D.N.Y. Apr. 9, 2002) ................................... 17

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................. 13

**Page(s)**

**Other Authorities**

Black's Law Dictionary (10th ed. 2014).......................................................................... 16

Merriam-Webster's Collegiate Dictionary (10th ed. 2002)................................................... 27, 33

Defendant MidOcean US Advisor, LP ("MidOcean") respectfully submits this memorandum of law in support of its Motion for Summary Judgment against Plaintiff Harvey & Company LLC ("Harvey").

## PRELIMINARY STATEMENT

Harvey claims that it is entitled to finder's fees of over $1.5 million in cash and up to 7% of the equity of KidKraft, LP ("KidKraft") based on a single 45-minute call that it arranged between MidOcean and KidKraft in April 2014.  Yet MidOcean did not acquire KidKraft until July 2015 – approximately a year after Harvey's agreement with MidOcean (the "Contract") was terminated, over 14 months after the April 2014 call, and only after MidOcean submitted the winning bid in a very broad, multi-month auction run by Lazard Middle Market ("Lazard"). Based on these undisputed facts, the plain language of the Contract and governing New York law foreclose Harvey's claim.

*First*, Harvey is not entitled to any equity fee.  The Contract expressly provides that only obligations incurred prior to its termination survive termination, and there can be no genuine dispute that the obligation to pay an equity fee is incurred only when an acquisition closes because the contract expressly says that the obligation to pay equity fees is incurred "upon the closing" of the transaction.  Even were there any ambiguity, ███████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████  And even if the Contract were silent and ████████████████████████████████████████████████████████████ courts uniformly recognize that the plain meaning of the words "obligation" and "incurred" mandate the conclusion that conditional obligations are incurred only when the condition has been met.  Here, there is no dispute that MidOcean's acquisition of KidKraft closed nearly a full year after the Contract terminated.  As a result, MidOcean did not incur any obligation to pay

equity interests to Harvey.  This is a purely legal issue that can and should be resolved on summary judgment.

*Second*, under well-established New York law, a finder's fee contract implicitly requires a finder to demonstrate a direct causal relationship, and not merely but-for causation, between its introduction and the ultimate transaction unless the contract expressly and unambiguously waives the causation requirement.  Consistent with this default rule, ███████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

Moreover, courts have explained that there is no direct causal relationship if either (1) one of the parties to the proposed transaction loses interest along the way or (2) the transaction is caused by an intervening factor.  The undisputed evidence shows that both factors preclude causation here. First, KidKraft was not interested in a transaction with MidOcean either before or after the introductory call, ████████████████████████████████████████████████████
███████   And for months after the call, KidKraft did not respond to any efforts by MidOcean to continue discussions.  Second, there was a clear intervening factor:  MidOcean acquired KidKraft only by winning a full-blown, months-long auction process run by Lazard.  Thus, Harvey is not entitled to any finder's fee because the undisputed evidence shows that it was not the direct cause of the transaction.

*Finally*, Harvey also failed to meet the additional criteria required to earn a cash finder's fee.  Unlike the equity fees at issue, the section of the Contract addressing cash transaction fees has a two-year "extension clause" or "tail."  However, Harvey can only invoke the extension clause if it "Last Introduced" MidOcean to KidKraft within two years of the acquisition, meaning that Harvey either (i) initiated "substantive discussions . . . regarding a transaction"

during the Contract term or (ii) provided material, non-public information during the Contract

term that led directly to "substantial discussions . . . regarding a transaction."  There is no dispute

that the April 2014 telephone call is the only discussion Harvey can point to, and there is no

evidence that the call included substantive or substantial discussions regarding a transaction.

Each of the witnesses remembers only ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ Harvey therefore

cannot meet either hurdle.  In addition, Harvey also cannot meet the first hurdle (which has

additional requirements) because it cannot demonstrate that it provided material, non-public

information about KidKraft that led to the April 2014 telephone call.  Thus, the undisputed facts

show that Harvey failed to meet either "Last Introduced" hurdle and is not entitled to a cash

transaction fee.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**MidOcean and Harvey Execute a Contract Providing for Equity Fees Only for Transactions That Close Before Contract Termination and Cash Fees Only Under a Two-Year Extension Clause with Hurdles**

In August 2011, MidOcean, a private equity firm, retained Harvey, an acquisition search

firm, to assist MidOcean in making acquisitions.  Def.'s Statement of Undisputed Material Facts

in Support of Def.'s Mot. for Summ. J. ("SUMF") ¶ 1. ███████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

3

To compensate Harvey for its services, MidOcean agreed to pay Harvey a monthly $5,000 retainer, which was to be applied against any cash or equity success fees that Harvey might earn.  *Id.* ¶¶ 6, 7.  In addition to the $5,000 monthly retainer, Harvey could also earn three forms of compensation upon the closing of a transaction between MidOcean and a company introduced to it by Harvey (a "Target Company"):  a cash fee, an equity fee, and equity options. *Id.* ¶ 8.

Under Section 4 of the Contract, Harvey could earn a cash "Transaction Fee" upon the closing of a transaction with a Target Company.  *Id.* ¶ 9.  While the Contract otherwise provides that only "obligations incurred hereunder as of the expiration of the Term shall continue in full force and effect following such termination," *id.* ¶ 5,[1] the cash Transaction Fee allows for a two-year extension under an "extension clause" or "tail":

> As compensation for Harvey's successful performance of the services described in Section 2 above, upon the closing of a transaction with a Target Company, ***provided the closing is within two years of the date the Target Company was Last Introduced*** (as defined below), Harvey shall receive a "Transaction Fee" . . . .

*Id.* ¶ 10 (emphasis modified).  The Contract defines "Last Introduced" to include two different tests Harvey could meet:

> "Last Introduced" means, with respect to a Target Company, the date of [**(1)**] the most recent communication from Harvey to [MidOcean] during the Term ***providing new or updated material information*** (excluding publicly available information such as SEC filings) possessed by Harvey with respect to acquiring such Target Company ***which leads directly to substantial discussions*** between [MidOcean] and such Target Company ***regarding a transaction***, or [**(2)**] the most recent date of ***substantive discussions*** during the Term initiated by Harvey between [MidOcean] or its affiliates and such Target Company ***regarding a transaction***.

---

[1] Section 1 of the Contract provides that termination is effective on the last day of the month in which notice of termination is provided.  SUMF ¶ 5.

*Id.* ¶ 11 (emphasis added).  Thus, Harvey could only earn a Transaction Fee if, within two years before the closing, it had (1) provided material, non-public information that led directly to "substantial discussions . . . regarding a transaction" between MidOcean and a Target Company, or (2) initiated "substantive discussions . . . regarding a transaction" during the Contract Term between MidOcean and a Target Company.  *Id.* ¶¶ 10, 11.

The equity interests Harvey could earn upon the closing of a transaction with a Target Company are governed by Section 5 of the Contract.  *Id.* ¶ 12.  Unlike the cash Transaction Fee, which has the two-year extension clause, these two potential fees would be incurred "upon the closing" of a transaction and there is no tail.  *Id.* ¶¶ 9-13.  The equity fee section provides:

> ***Upon the closing of a transaction with a Target Company***, [MidOcean] shall cause Harvey or its designee . . . to receive a two percent (2.0%) equity interest . . . in the legal entity through which the transaction is to be conducted . . . .

*Id.* ¶ 13 (emphasis added).  The Contract also provided Harvey a limited option to purchase equity securities of "up to five percent (5.0%) of the equity investment being made by [MidOcean] and its co-investors."  *Id.* ¶ 14.  As with the equity fee of section 5.1, MidOcean's obligation to offer the option under section 5.3 would arise only "upon the closing of a transaction with a Target Company."  *Id.* ¶ 15.

**KidKraft Remained Disinterested in MidOcean After the Sole 45-Minute Call Harvey Arranged Between KidKraft and MidOcean**

*Before the MidOcean-KidKraft Call, KidKraft Provided Little Information to Harvey and Was Not Interested in a Transaction with MidOcean*

5

[redacted]

---

[2] *See* Decl. of Daniel H. Tabak in Support of Def.'s Mot. for Summ. J. ("Tabak Decl.") (Dec. 15, 2017), Exs. Q (Transcript of August 17, 2017 Deposition of Sean Daugherty ("Daugherty Dep.")), at 141:20-145:15; X (Transcript of June 28, 2017 Deposition of David W.M. Harvey (" Harvey Dep.")), at 12:19-23, 77:2-13; L (Transcript of June 23, 2017 Deposition of Daniel Penn ("Penn Dep.")), at 77:21-78:4; P (Transcript of June 9, 2017 Deposition of Jared Perrin ("Perrin Dep.")), at 44:5-16, 151:14-18.

*Lampert Was Confused as to MidOcean's Role Throughout the Short Call About Background Information on the Participants*



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

*After the Call, KidKraft Still Had No Interest in a Transaction with MidOcean*

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████

████████████████

███████████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████

████████████████████████████

**Nearly a Year After Terminating the Contract, MidOcean Acquired KidKraft by Submitting the Best Bid in a Very Broad, Multi-Month Auction**

*Prior to the Auction, KidKraft Continued to be Disinterested in MidOcean at a Fall 2014 Breakfast Meeting*

██████████████████████████████

███████████████████████████████████

███████████████████████████████

██████████████████████████

████████████████████████████████████████

███████████████████████████████

███████████████████████████████

███████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████

*MidOcean Won the Lengthy Auction with the Best Bid*

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

████████████████████████████████

████

███████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████████

████████████████████████████████

███████████

## LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, "any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992).

## <u>ARGUMENT</u>

I.   **HARVEY IS NOT ENTITLED TO ANY EQUITY FEE BECAUSE THE TRANSACTION CLOSED AFTER THE TERMINATION OF THE CONTRACT**

It is a "well-recognized principle of New York law . . . that New York courts will enforce a termination clause as written." *Retail Assocs., Inc. v. Macy's E., Inc.*, 245 F.3d 694, 699 (8th Cir. 2001) (internal quotation marks omitted) (applying New York law and collecting cases). Pursuant to the termination clause in the Contract at issue, only obligations incurred prior to termination survive termination. The Contract unambiguously provides that MidOcean's obligation to pay equity fees under Section 5 is incurred upon the closing of a transaction with a target company. And there is no dispute that the Contract was terminated in July 2014, nearly a full year before the closing of MidOcean's acquisition of KidKraft in July 2015. The undisputed facts therefore show that MidOcean did not incur an obligation to pay equity fees prior to termination of the Contract, so the Court should grant summary judgment dismissing Harvey's request for equity fees.

The Contract expressly provides that "obligations incurred hereunder as of the expiration of the Term shall continue in force and effect following such termination," with the Term expiring "on the last day of the month in which . . . notice [of termination] is provided." SUMF ¶ 5; Tabak Decl., Ex. A (Contract) § 1. All obligations that have not yet been incurred are terminated at that time. *See Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 904 (4th Dept.

14

1984), *aff'd*, 66 N.Y.2d 824 (1985) ("When a contract is terminated, such as by expiration of its own terms, the rights and obligations thereunder cease.").[3]

Any equity obligation of MidOcean is not incurred until the closing of an acquisition. As the Court noted in addressing MidOcean's motion to dismiss, the first place to look in determining when an obligation is incurred is the contract itself. Jan. 17, 2017 Oral Argument Tr. 8:9-11. Under Section 5's plain language, obligations to pay equity fees are incurred only "[u]pon the closing of a transaction with the Target Company." SUMF ¶ 13. The Court should enforce this unambiguous language and find that equity fees are incurred upon the closing. But even if the Contract did not provide that the obligation to pay equity fees is incurred upon the closing, the extrinsic evidence and plain meaning of "obligation incurred" also confirm this conclusion.

*First,*



---

[3] When MidOcean and Harvey sought to have certain obligations survive termination, they expressly provided for this, as evidenced by Sections 6, 11, and 4. Section 6 provides that indemnification obligations (which might not be incurred during the Term) "shall survive the expiration of the Term." Tabak Decl., Ex. A (Contract) § 6. Similarly, Section 11 provides that "[d]uring the Term and for the 12 month period subsequent thereto, [MidOcean] shall not solicit for employment any directors, officers or employees of Harvey . . . ." *Id.* § 11. And Section 4 provides that Harvey can receive a Transaction Fee for successful performance of its services "provided the closing is within two years of the date the Target Company was Last Introduced." *Id.* § 4. Section 5, however, contains no such extension clause. *Id.* § 5. Accordingly, there is no extension beyond termination that applies to Section 5. *See Innovative BioDef., Inc. v. VSP Techs., Inc.*, No. 12 CIV. 3710 ER, 2013 WL 3389008, at *5 (S.D.N.Y. July 3, 2013) ("Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional.").

*Second*, even if Section 5 did not include the phrase "upon the closing," the obligation would be incurred at closing under the plain meaning of "obligations incurred" in Section 1. "Obligation" is defined as a "legal or moral duty to do or not to do something," or a "formal, binding agreement or acknowledgement of a liability to pay a ***certain*** amount or to do a ***certain*** thing for a particular person or set of persons." Black's Law Dictionary 1242 (10th ed. 2014) (emphasis added).[4]  Courts have similarly concluded that the plain meaning of the word "incurred" means "become liable for." *See Farr v. Travelers Indem. Co.*, 375 N.Y.S.2d 229, 232 (N.Y. Sup. Ct. 1975) (applying plain meaning of "incurred" in insurance contract); *In re Big Apple Volkswagen, LLC*, No. 11-11388 (JLG), 2016 WL 1069303, at *13 n.31 (Bankr. S.D.N.Y. Mar. 17, 2016) (explaining that construing "'incurred' to mean when [an obligor] first becomes legally bound to pay comports . . . with the plain meaning of the word," as well as policy); *In re Le Café Crème, Ltd.*, 244 B.R. 221, 233-34 (Bankr. S.D.N.Y. 2000) ("An obligation . . . is incurred when a debtor becomes legally bound to pay.") (internal quotation marks omitted). Thus, under the plain meaning of the phrase "obligations incurred," the obligation to pay any finder's fee is not incurred until MidOcean becomes liable for a certain amount, *i.e.* at the closing of a transaction.

*Third*, courts have uniformly concluded that where an obligation is contingent upon the happening of another event, that obligation is not incurred until the triggering event transpires.  It is well-established that "[o]bligations for payments that are contingent on other events occurring are incurred when the contingency is triggered." *In re: BH S&B Holdings LLC*, 426 B.R. 478, 484 (Bankr. S.D.N.Y. 2010); *see also, e.g. Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 990 (2d Cir. 1981) (rejecting argument that obligation was incurred upon execution of guaranty

---

[4] "It is common practice for the courts of New York State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (internal quotation and alteration marks omitted).

because "[u]ntil the loans were made, there existed only a framework through which [the guarantors] might incur obligations, but they had not done so yet"); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, No. 01 Civ. 8946 (RWS), 2002 WL 535479, at *8 (S.D.N.Y. Apr. 9, 2002) (Sweet, J.) (finding that an "obligation [that] was specifically bargained for to be contingent upon a future event," rather than accrued over time, is incurred only once the contingent event takes place). Here, the contingency was triggered – and the obligation to pay finder's fees incurred – upon the closing of the MidOcean-KidKraft deal.

There is no dispute that the Term expired on July 31, 2014. *See* SUMF ¶¶ 5, 80. As of the end of the Term, MidOcean had not incurred any obligation to compensate Harvey for the KidKraft acquisition, which would not close until nearly a full year later, in July 2015. *See id.* ¶ 135. Therefore, MidOcean is not obligated to pay Harvey any equity fee under the Contract.

## II.   THE UNDISPUTED EVIDENCE SHOWS THAT HARVEY'S ACTIONS COULD NOT HAVE DIRECTLY CAUSED MIDOCEAN'S ACQUISITION OF KIDKRAFT BECAUSE KIDKRAFT HAD NO INTEREST IN MIDOCEAN AFTER (OR BEFORE OR DURING) THE INTRODUCTION AND THE AUCTION WAS AN INTERVENING CAUSE

It is black-letter law in New York that to obtain a fee, a finder must establish a direct, uninterrupted causal connection (not just but-for causation) without intervention of a third party or any indication that either party lost interest – unless the contract expressly and unambiguously waives the default causation requirement. Here, no Contract provision waives the default causation requirements, and no reasonable jury could find any causal connection, much less a direct and uninterrupted connection, between the single 45-minute call that Harvey arranged and MidOcean's acquisition of KidKraft more than 14 months later, following a full-blown auction process. First, it is undisputed that KidKraft never had any interest in pursuing a transaction with MidOcean prior to the auction; indeed, ████████████████████████████████ ███████████████████████████████████████████████████████████ Second,

17

even were there a causal connection, the months-long auction process that Lazard conducted was an intervening cause of MidOcean's acquisition of KidKraft.  Indeed, ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████     Accordingly, Harvey is not entitled to any finder's fee.

### A.     Under Well-Settled New York Precedent, Every Finder's Fee Contract Requires Direct Causation Unless It Is Unambiguously Waived in the Contract

Under New York law, to establish liability under a finder's fee agreement, the finder must establish "a causal relation between the introduction of the parties and the ultimate conclusion of the transaction."  *Moore v. Sutton Res., Ltd.*, No. 96 Civ. 7522 (RWS), 1998 WL 67664, at *4 (S.D.N.Y. Feb. 18, 1998) (collecting cases), *aff'd*, 165 F.3d 14 (2d Cir. 1998).[5]  It is not enough to show "but-for" causation.  *See id.* (explaining that "courts have consistently required" more).  Instead, the finder must show that the introduction ***directly*** led to the final deal, which in turn requires the parties to have continued negotiating "***without intervention*** of a third-party and ***without any indication that either party lost interest***."  *Id.* at *6 (emphasis added).  Significantly, this direct causation requirement is implied in every finder's fee contract even if it is not explicitly stated in a contract.  *See, e.g.*, *Karelitz*, 820 F.2d at 529, 531 (finding causation without relying on a causation contractual provision); *Moore*, 1998 WL 67664, at *1, 4-5 (same);

---

[5] *Accord Karelitz v. Damson Oil Corp.*, 820 F.2d 529, 531 (1st Cir. 1987) (Breyer, J.) (explaining that under New York law a "finder must show that the deal that was made resulted and flowed directly from the original introduction") (citation and internal quotation omitted); *Edward Gottlieb, Inc. v. City & Commercial Commc'ns PLC*, 606 N.Y.S.2d 148, 150-51 (1st Dep't 1994) (holding that plaintiff was "not entitled to a 'finder's fee' because "[t]here must be some continuing connection" showing that the merger was the "direct result" of the plaintiffs' initial efforts) (internal quotation marks omitted); *Ferghana Partners Inc. v. Bioniche Life Scis. Inc.*, 939 N.Y.S.2d 740, 2011 WL 5385095, at *9 (N.Y. Sup. Ct. 2011) ("Plaintiff fails to meet its burden of demonstrating any continuing causal connection.").

18

*Edward Gottlieb*, 606 N.Y.S.2d at 395, 399 (same).  And, because direct causation is implied, the parties can eliminate the causation requirement only with an express and unambiguous waiver.[6]  No court has ever held otherwise.[7]

    *Multi Capital Group LLC v. Karasick,* No. 652598/2011, 2015 WL 1850506 (N.Y Sup. Ct. Apr. 22, 2015), is a recent New York state court case applying these principles.  The court in *Multi Capital Group* explained that causation may be a question of fact if only a "minimal amount of time elapsed" between the initial introduction and the closing.  *Id.* at *5.  But if the time gap is not *de minimis*, "some meaningful aspect of the prospective deal attributable to plaintiff must bridge the gap between the original introduction and the eventual deal."  *Id.* at *6. The court in that case granted summary judgment, finding no nexus between the introduction and the eventual deal because the plaintiff "did nothing to make a sale" occur "in the intervening" time between the introduction and the closing and because subsequent opportunities to make the purchase "were brought to defendants by parties unaffiliated with plaintiff."  *Id.* at *6-7.

    Here, there is no provision waiving the implied requirement of direct causation that is inherent in every finder's fee agreement.[8]  And were there any ambiguity on whether the contract

---

[6] *See Mgmt. Recruiters of Boulder v. Nat'l Econ. Research Assocs., Inc.*, No. 02 Civ. 3507 (BSJ), 2005 WL 77059, at *5 (S.D.N.Y. Jan. 13, 2005) ("Despite . . . general [common law] principles, an employer may agree to compensate an employment placement agency for its services even if the agency was not the procuring cause of the hiring of an employee."); *Beverley v. Mickleberry Corp.*, 161 A.D.2d 292, 293 (1st Dep't 1990) (explaining that despite the default causation rule, "parties may, in particular circumstances, reach a specific understanding that a finder's commission will be payable even if the finder's efforts are not a direct or procuring cause of the acquisition").

[7] New York law implies many terms into contracts, some well-known such as the implied covenant of good faith and fair dealing, *see, e.g., Fishoff v. Coty, Inc.*, 634 F.3d 647, 653 (2d Cir. 2011), and the at-will employment presumption, *see, e.g., Rooney v. Tyson*, 91 N.Y.2d 685, 689 (1998), but also less common ones such as an employee's duty of utmost good faith and loyalty to an employer. *See, e.g., Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 416-17 (2001).  The failure to enforce any of these implied contractual terms would rewrite New York law and constitute reversible error.  *See, e.g., id.*

[8] Harvey previously pointed to a contractual provision that Harvey is not required to conduct due diligence, but that is a far cry from an unambiguous waiver of the direct causation requirement.  As the First Department has made clear, proof of causation is required where "the contract . . . is ambiguous on this point."  *Barrister Referrals, Ltd. v. Windels, Marx, Davies & Ives*, 169 A.D.2d 622, 623 (1st Dep't 1991) (citing *Beverley*, 161 A.D.2d at 293.

had a provision disclaiming the causation requirement, Harvey resolved that ambiguity in the

negotiation period █████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████

**B.     Harvey Cannot Demonstrate a Direct Causal Relationship Between the 45-
        minute April 2014 MidOcean-KidKraft Call It Set up and the Ultimate
        Acquisition That Took Place More Than 14 Months Later, Following a Very
        Broad Auction Process**

Under New York law, an introduction does not cause a final transaction if either party

loses interest along the way.  *Moore*, 1998 WL 67664, at *6.  Here, KidKraft did not lose interest

in a transaction with MidOcean following the introduction because it never had an interest –

before or after the introduction.

It took months for KidKraft to agree to the introductory call.  ██████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████

20





[REDACTED]

In short, the undisputed evidence shows that MidOcean and Harvey both understood that the April 2014 call would not lead directly to a transaction because KidKraft remained disinterested.

### C. Harvey Also Cannot Demonstrate Causation Because the Auction Was an Intervening Cause

New York law also requires direct causation without an intervening cause. *See, e.g.*, *Moore*, 1998 WL 67664, at *6 (explaining that causation must be "without intervention of a third-party"); *Karelitz*, 820 F.2d at 531 (explaining that contractual causation principles are the same as negligence principles). "But-for" causation is not enough. *Moore*, 1998 WL 67664, at *4. Here, the undisputed facts show that the direct and intervening cause of MidOcean's acquisition of KidKraft was MidOcean winning the Lazard-run auction process.

Lazard ran an extensive auction process over many months. [REDACTED]

 There is

therefore no genuine dispute that Harvey's unsuccessful introduction of MidOcean to KidKraft

was not the direct cause required for Harvey to obtain a finder's fee.

## III.   HARVEY IS NOT ENTITLED TO A TRANSACTION FEE UNDER SECTION 4 BECAUSE IT DOES NOT ALLEGE THAT IT MET EITHER "LAST INTRODUCED" HURDLE

Harvey is also not entitled to a cash Transaction Fee under Section 4 of the Contract

because it cannot meet either prong of the Last Introduced hurdle.  Under Section 4, Harvey can

obtain a cash Transaction Fee only "upon the closing of a transaction with a Target Company,

provided the closing is within two years of the date the Target Company was Last

Introduced . . . ."  SUMF ¶ 10.  The Contract further defines "Last Introduced" to mean:

> the date of [(**1**)] the most recent communication from Harvey to
> [MidOcean] during the Term ***providing new or updated material
> information*** (excluding publicly available information such as
> SEC filings) possessed by Harvey with respect to acquiring such
> Target Company ***which leads directly to substantial discussions***
> between [MidOcean] and such Target Company ***regarding a
> transaction***, or [(**2**)] the most recent date of ***substantive
> discussions*** during the Term initiated by Harvey between
> [MidOcean] . . . and such Target Company ***regarding a
> transaction***.

*Id.* ¶ 11.  Thus, Harvey can only satisfy the "Last Introduced" hurdle by either (1) providing

material, non-public information leading directly to substantial discussions between MidOcean

and KidKraft regarding a transaction; or (2) initiating "substantive discussions" during the Term

regarding a transaction.  The undisputed facts demonstrate that Harvey cannot meet either test.

**A.** **Harvey Did Not Initiate "Substantive Discussions" Regarding a Transaction During the Contract Term**

The second "Last Introduced" hurdle requires that Harvey initiated (i) substantive discussions (ii) between MidOcean and KidKraft (iii) regarding a transaction (iv) during the Term.[9]  To meet this hurdle, Harvey must provide facts demonstrating that it has met each of these four elements, *see*, *e.g.*, *LaSonde v. Seabrook*, 89 A.D.3d 132, 138 (1st Dep't 2011) (explaining that terms of contract should not be rendered mere surplusage), including that the discussions regarding a transaction were substantive, *i.e.* "real" or "considerable."  *See* Merriam-Webster's Collegiate Dictionary 1170 (10th ed. 2002) (definition of substantive).  The only conversation between MidOcean and KidKraft during the Term was the April 29, 2014 telephone call.  The undisputed evidence shows that there was no substantive discussion regarding a transaction on that call.

All of the witnesses with backgrounds in doing transactions, including witnesses from Harvey itself, agreed ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

─────────────────

[9] This memorandum addresses the second hurdle first because Harvey did not allege in its Complaint that it met the first hurdle (which it did not).  *See* Tabak Decl., Ex. D (Compl.) ¶¶ 17-27.



---

■ ▮  Peiser did not recall the call at all.  SUMF ¶ 63.



Taken together, all of the available evidence about the April 29, 2014 call demonstrates that it was an informational call that did not discuss a transaction or even the possibility of a transaction

[11]

In a case with remarkably similar facts, the Southern District of New York rejected any suggestion that preliminary conversations similar to the MidOcean-KidKraft introductory call rise to the level of "substantive discussions" concerning a transaction. In *Goodridge v. Harvey Group, Inc.*, 778 F. Supp. 115 (S.D.N.Y. 1991), the Court considered a meeting between a potential acquirer and officials of a target company. *Id.* at 119. At the meeting, the parties "discussed the nature and performance" of the target and representatives of the target company

informed the potential buyer that the target "had just completed [its] most successful fiscal year." *Id.*  The Court considered these facts and concluded that the parties' "general observations about the nature of the business and the [target's] strong performance . . . in the most recent fiscal year" were not "substantive discussions or negotiations concerning the proposed merger."  *Id.* at 125.  The same result applies to the very similar discussions that took place on the April 29, 2014 telephone call.  *Accord I. Oliver Engebretson, Inc. v. Aruba Palm Beach Hotel & Casino*, 587 F. Supp. 844, 848-49 (S.D.N.Y. 1984) (finding that meeting at which defendants attempted to modify agreement was not of "substantive importance" sufficient to confer personal jurisdiction upon defendant).

In sum, there is no evidence that will enable Harvey to meet its burden of demonstrating that the April 29, 2014 call was a "substantive discussion" between MidOcean and KidKraft regarding a transaction.

### B.      Harvey Failed to Provide Material, Non-Public Information Directly Leading to a Substantial Discussion About a Transaction

Having not alleged in its Complaint that it met the first "Last Introduced" hurdle, Harvey also failed to meet it.  To meet the first hurdle, Harvey must prove that it:  (i) provided new or updated (a) non-public and (b) material information about KidKraft (ii) during the Term that (iii) led directly to (iv) substantial discussions (v) between MidOcean and KidKraft (vi) regarding a transaction.  The undisputed evidence shows that Harvey did not meet this test because it did not provide either non-public or material information about KidKraft and the information it provided did not lead directly to substantial discussions between MidOcean and KidKraft regarding a transaction.

As an initial matter, like "substantive," the word "substantial" is commonly understood to mean "important, essential," "real," and "significantly great."  Merriam-Webster's Collegiate

Dictionary 1170. ██████████████████████████████████████

████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████

Thus, the undisputed evidence showing that there was no substantive conversation regarding a

transaction also shows that there was no substantial conversation regarding a transaction.  *See*

Section III.A, *supra*.

     The undisputed evidence also shows that Harvey did not provide MidOcean with material

or non-public information regarding KidKraft.[12] ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

        ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[12] "Material" is defined as "having real importance or great consequences."  Merriam-Webster's Collegiate Dictionary 715.



        In short, the undisputed evidence shows that Harvey cannot demonstrate that it met either test under the first "Last Introduced" hurdle.  It did not provide material or non-public information about KidKraft to MidOcean, nor did MidOcean and KidKraft have a substantial discussion regarding a transaction as a direct result of the lead memo Harvey provided.

---

[13] Harvey's counsel chose not to ask █████████████████████████████████

## CONCLUSION

For the foregoing reasons, MidOcean respectfully requests that the Court grant its motion for summary judgment and permit MidOcean to make an application for costs and expenses, including reasonable attorney's fees, under Section 10 of the Contract.

Dated:  December 15, 2017                    Respectfully submitted,
New York, New York

**COHEN & GRESSER LLP**

By:  /s/ Daniel H. Tabak
   Daniel H. Tabak
   dtabak@cohengresser.com
   800 Third Avenue, 21st Floor
   New York, NY  10022
   Phone:  (212) 957-7600
   Fax:  (212) 957-4514

   Erica C. Lai (admitted *pro hac vice*)
   elai@cohengresser.com
   2001 Pennsylvania Avenue NW
   Suite 300
   Washington, DC 20006
   Phone:  (202) 851-2070
   Fax:  (202) 851-2081

   *Attorneys for MidOcean US Advisor, LP*